(Franklin Co. Court of Common Pleas.)

STATE OF OHIO, ex rel. SELWYN N. OWEN, as Director of Law, v. JOHN T. BARR, as City Clerk, etc.

---

(1.) An ordinance establishing a police force for the city of Columbus and fixing the compensation thereof, is an ordinance both "involving an expenditure of money" and "creating a right."

(2.) Every such ordinance should, before it takes effect, be presented, duly certified by the clerk, to the mayor of the city for approval.

---

WILLIAMS, J.

The facts in this case as disclosed by the petition are as follows: The city of Columbus is a city of the first grade of the second class, duly organized under the laws of Ohio; the relator, Selwyn N. Owen, is the duly appointed and acting director of law of said city, and as such has the powers and performs the duties devolved upon the city solicitors in such cities; said city has a duly elected and acting council, of which the defendant, John T. Barr, is the duly elected and acting clerk; Samuel L. Black is the duly elected, qualified and acting mayor of said city. At a regular session on

[COPYRIGHT, 1898, BY CARL G. JAHN.]

June 20th, 1898, said council passed an ordinance number 13, 830, entitled an ordinance " to amend section 7 of ordinance number 12,232, amending section 86 of the codified ordinances relating to the department of public safety, of the city of Columbus, Ohio," establishing a police force for said city and fixing the compensation thereof, a copy of which ordinance is made a part of the petition; the defendant has refused and still refuses to certify said ordinance, and has refused and still refuses to present the same so certified to said mayor for his approval, and refuses to permit the mayor to have said ordinance for said purpose, although said mayor has duly made demand therefor; the defendant is the legal custodian of said ordinance, and said mayor is powerless to obtain the same except by the process of this court.

The relator alleges that by the laws of Ohio for the government of the cities of the first grade of the second class it is provided that every ordinance, resolution or order involving the expenditure of money, granting franchises or creating a right, that is passed by the councils of such cities shall, before it takes effect, be presented, duly certified, by the clerk of such city to the mayor of said city for his approval; and also that the ordinance aforesaid as passed by said council is one "creating a right" and "involving an expenditure of money", and should be presented to said mayor for approval.

To the petition and alternative writ issued thereon the defendant has demurred, for the reason and upon the ground that the same do not state facts sufficient in law to constitute a cause of action against him, or to warrant the relief for which the relator prays.

The ordinance which is the subject of this action provides for a police force for the city, names the different officials and the number thereof that shall constitute such force, fixes the salary of each officer and provides for the taking of an oath of office and the giving of bond. This ordinance amends an ordinance which was passed in conformity with the provisions of an act of the general assembly of the state of Ohio, passed March 8, 1893, (Local Laws of Ohio, vol. 90, p. 136) known as the charter law of the city of Columbus. Section 5 of that act is as follows: "The council shall by ordinance establish and maintain a police force, to consist of a superintendent and such subordinate officers and patrolmen as it shall from time to time deem necessary, and fix their compensation." Section 3 of the same act provides that "Every legislative act of the council shall be by ordinance, resolution or order. No ordinance, resolution or order involving an expenditure of money, or the approval of a contract for the payment of money, or for the purchase, sale, lease or transfer of property, or granting a franchise, or creating a right, or levying any tax, or imposing any fine, penalty or for

feiture, shall be passed until at least one week shall have elapsed after the same has been introduced and read in council, and every such ordinance, resolution or order which shall have passed the council, shall, before it takes effect be presented, duly certified by the clerk, to the mayor of the city for approval."

It is not strongly contended by counsel representing defendant that it is by reason of the provisions of section 5 of the charter law that defendant is not required to present said ordinance to the mayor for approval. There was another purpose in incorporating that section into this law. Prior to the passage of this act all powers and duties with respect to the appointment regulation, government and control of the police were vested in and exercised by a board of police commissioners. The charter law abolished that board and the act creating it so far as it applied to the city of Columbus, and by section 5 of said charter law gave to the city council certain powers and duties with respect to the police force, and by section 48 of said law gave to the director of public safety certain other powers and duties with respect to such force. Here we see the probable reason for the enactment of section 5.

It is not contended by the counsel for relator that the power or authority to approve or disapprove any act of the city council exists in the mayor, except as the same is conferred by section 3 of said charter law.

The question before us must depend upon a proper construction or interpretation of the language used in section 3. It is clear that the ordinance does not involve the approval of a contract for the payment of money, or for the purchase, sale, lease, or transfer of property, or granting a franchise, or levying any tax, or imposing any fine, penalty, or forfeiture. Is it an ordinance "involving the expenditure of money", or "creating a right"? If the ordinance is either of these it must be presented to the mayor for approval before it can take effect.

What is meant by the clause "involving the expenditure of money"? The most reasonable definition of the word "involve" as applied to this statute is this, given by Webster; "to connect with something as a natural or logical consequence or effect; to include necessarily; to imply." Supplying this meaning to the word for the word itself we have these expressions,—"having as a natural consequence or effect an expenditure of money," or "including necessarily an expenditure of money," or "implying an expenditure of money." We take it that the legislature meant an expenditure of money by the city of Columbus.

Accepting these expressions which we have named as synonymous, that part of section 3 under consideration may be said to mean "an ordinance having as a natural consequence or effect the expenditure of money", or "any ordinance including necessarily the expenditure of money",

or "any ordinance implying an expenditure of money".

The ordinance under consideration authorizes the appointment of over one hundred persons to offices and fixes their compensation. As soon as the ordinance goes into effect, the director of public safety has the power and authority to appoint that number of officers, who may qualify and enter upon the discharge of their duties as such officers, and thereby place upon the city an obligation to pay them for such services, which obligation could be enforced at law. And all this may follow as a natural consequence of the passage of said ordinance, and without any further act upon the part of the council. Even if the council should refuse to make an appropriation for the payroll of these officers, each one would have a right of action against the city for his salary. Hence the conclusion cannot be avoided that the ordinance 13, 830 has as a natural consequence the expenditure of money, that its passage and taking effect implies that the director of public safety will perform his duty in the appointment of such officers, that said officers will qualify and enter upon the discharge of their duties, and that the city will expend money by reason thereof, that is, will pay them for their services.

But it is contended that there must be a direct and immediate expenditure of money. That, however, is not the language used by the legislature. If that is what was meant or intended the word "appropriate" would have been used instead of involve." "Appropriate" used in his connection would make the expenditure direct, immediate and specific, and if the legislature had intended thus to circumscribe to these narrow bounds the character of ordinances to be submitted to the mayor the presumption is that it would have done so in clear and unmistakable terms. We are of the opinion that the purpose of the enactment of this paragraph of the charter law was to prevent the wanton and needless expenditure of public funds, and to render it impossible for the city council to authorize the contracting of any debt or incurring of any liability without first submitting the proposition to the mayor of the city.

In defense of the city clerk's position in refusing to present this ordinance to the mayor for his approval his counsel cite and seem to rely chiefly upon the case of the State ex rel. v. Henderson, 38 Ohio St., 644. In that case the ordinance was but a preliminary one. It designated a route for a street railroad, but authorized the expenditure of no money, nor the incurring of any debt, except that it required the city clerk to advertise for certain bids. But that ordinance did not create the liability or authorize the expenditure as the statute in such cases required such an advertisement. Again, the expenditure did not necessarily fall upon the city, for, as Judge Longworth says, "the successful competitor is required to pay to the city auditor $100 to cover the

expense of printing and publishing the necessary resolutions, notices and ordinances.'

In the case at bar it is not denied that the ordinance provides for the establishment of one of the most important branches of the city government, nor that upon it taking effect it would actually result in the city becoming responsible for salaries and wages amounting to nearly $100,000 per annum. In the Henderson case the only liability was for an advertisement which was provided for by law and which the city council might have escaped. And as if to forestall any attempt to give to his opinion n the case a meaning not intended by counsel in the case at bar, Judge Longworth said:

"Without attempting here to draw a definite line between those ordinances, orders and resolutions which do. and those which do not, require the mayor's approval, we are content with saying that this ordinance did not."

Judge Longworth did not at any time have before him an ordinance which had any of the features of the one* in the case at bar.

We do not think that the cases cited by counsel for defendant support their contention.

In the case of city of Burlington v. Dennison 42 N. J. L. Rep., 165, the court held that the approval of the mayor was not essential to the validity of a resolution of council. because the charter of the city only required the mayor's approval of ordinances.

The case of Trowbridge v. Newark, 46 N. J. L., 140, involved the question of whether the charter of the city of Newark required a proposed ordinance to be published ten days between its second and third reading. The charter of the city required all ordinances and resolutions affecting personal liberty, or involving the expenditure of money to be thus published. The court had under consideration in that case a resolution declaring vacant the offices of lieutenants of police, and appointing certain persons to the places so made vacant. and in deciding the case the court said:

"It is not pretended that the ordinance of 1864 affected personal liberty, nor does it involve the expenditure of money. It does not provide for the appointment of a greater number of officers than before, nor does it give any larger salary than was previously received."

It is fair to assume that the court meant by this that the ordinance did not involve the expenditure of money because it does not increase either the number of officers of the salary that any of them should receive. If that proposition be true, then the converse of it must be true. That is, an ordinance does involve the expenditure of money which either increases the number of officers or the amount of the salary which any one of them shall receive. We have before us a copy of the ordinance which the ordinance in controversy seeks to amend. A compari-

son of the ordinances discloses that their only material difference is in the number of offices created and the amount of the salaries provided. Apply the converse of the rule laid down in the Trowbridge case and the conclusion cannot be avoided that the new ordinance does involve the expenditure of money.

Passing now to the consideration of what is a "right" within the meaning of the clause "creating a right", we find among others the following definitions:

"Right": "That which one has a legal or social claim to do or to exact; legal power; authority; as, a sheriff has the right to arrest a criminal." Webster's International Dictionary.

"Often used to designate power, prerogative and privilege, especially when applied to corporations." A capacity residing in one man of controlling, with the assent and assistance of the state, the action of others." A. & E. Ency. of Law, vol. 21, p. 406.

"A legal right may be said to be a claim which can be enforced by legal means against the persons or community whose duty it is to respect it." Blackstone, Book 1, p. 123.

"A power, privilege, prerogative." Anderson's Law Dictionary.

The meaning given by these definitions must have been the meaning intended for this clause by the legislature. A franchise is sometimes termed a right, but that evidently is not the kind of right referred to here, since the section specially enumerates "the granting of the franchises" in naming the classes of legislation by the council which require to be submitted to the mayor for approval. If "franchises" and "right" here mean the same thing, then the clause, "or creating a right" is tautology, and the courts are always constrained to giving such force and effect to statutes as will avoid tautological expressions. In Pancoast v. Ruffin, etc., 1 Ohio, 386, the court says:

"Statutes should be so construed as to give effect to the intention of the legislature, and, if possible, render every section and clause effectually operative."

Besides franchises we know of no other class, or kinds of right, except those comprehend d in the definitions before given, whi h a city council has the power to create. The "right" meant by the statute then, is a prerogative, authority, a legal power. Does the ordinance in controversy create such a right? We think it does. It confers upon the director of public safety certain fixed powers. It gives to him the authority, the right to appoint one hundred and five patrolmen, and numerous other officers. It is the act of the city of Columbus, through its lawmaking power, creating in one of its officers the power, the authority, the "right", to select nearly one hundred nd fifty of its employes. In taking this iew of the ordinance we follow the reasoning of the supreme court of New York, in the case of People against Dikeman, 7 Howard's Prac. R., 130, wherein the court

say: "In law it ( the word "right") is most frequenty applied to property in its restricted sense, but it is often used to designate power, prerogative, and privilege, and especially when applied to corporations. Indeed, a large portion of the rights of political corporations consists of powers conferred upon them. Corporate powers are not generally exercised by the whole body. They are, to a great extent, delegated to its officers, and in municipal corporations to the different departments; these are generally electoral, legislative and administrative." The ordinance in controversy is one creating such a right.

Placing this interpretation upon the ordinance under investigation is but giving force and effect to the central idea of our present form of municipal government. The law under which we have our present system of government clearly shows that it was framed upon what is known as the federal plan. We have the three distinct departments of government, but they are inter-dependent. While the city council is the sole legislative body, the unmistakable purpose of the law is to bridle that power so as to prevent the expenditure of public funds without the concurrence of a co-ordinate branch of the government. As the president of the United States must have submitted to him for his signature or veto every act of congress before it can become a law, so the city council of the city of Columbus can pass no important legislation without submitting the same to the mayor for his approval or disapproval.

We are of the opinion that the ordinance in controversy is an ordinance "involving an expenditure of money"; also that it is one "creating a right",—and for each of these reasons should, before it takes effect, be presented, duly certified by the clerk, to the mayor of the city for approval.

Defendant's demurrer, therefore, should be overruled.

S. N. Owen, E. C. Irvine, and C. J. Pietzman, for Plaintiff.

Cyrus Huling, and G. S. Peters, for Defendant.